**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

FILED
at ___ O'clock & ___ min ___ M
NOV 0 9 2007
United States Bankruptcy Court
Columbia, South Carolina (6)

| | |
|---|---|
| In re,<br><br>Marlene T. Sipes,<br><br>                                        Debtor(s). | C/A No. 07-00513-JW<br><br>Adv. Pro. No. 07-80060-JW<br><br>Chapter 13<br><br>**AMENDED ORDER**[1] |
| The Supreme Court of South Carolina, The Lawyers' Fund for Client Protection, Office of Disciplinary Counsel,<br><br>                                        Plaintiff(s),<br><br>v.<br><br>Marlene T. Sipes,<br><br>                                        Defendant(s). | |

This matter comes before the Court upon motion by The Supreme Court of South Carolina, The Lawyers' Fund for Client Protection, and Office of Disciplinary Counsel ("Plaintiffs") for summary judgment pursuant to Fed. R. Civ. P. 56 made applicable to this proceeding by Fed. R. Bankr. P. 7056. This Court has jurisdiction over this adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O). The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[2]

**FINDINGS OF FACT**

**ENTERED**
NOV 0 9 2007
**J.G.S.**

---

[1] This Order is being amended to correct a typographical error on page 10.
[2] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

1. The Supreme Court of South Carolina is governmental body created by the Constitution of the State of South Carolina.[3]

2. The Supreme Court of South Carolina is charged with regulating the practice of law in South Carolina and is empowered to create rules regarding the discipline of attorneys who are members of the South Carolina Bar.[4]

3. Under rules promulgated by the Supreme Court of South Carolina, the Supreme Court of South Carolina created both the Lawyers' Fund for Client Protection ("Lawyers' Fund")[5] and Office of Disciplinary Counsel ("ODC").[6]

4. The ODC is vested with the authority to prosecute attorney discipline proceedings before the Supreme Court of South Carolina and to make recommendations on attorney discipline.

5. The Lawyers' Fund is a special committee of the South Carolina Bar. It holds, manages, and disburses certain funds collected by the South Carolina Bar, to the extent it deems proper and feasible, for "losses caused by the dishonest conduct of members of the South Carolina Bar."[7]

6. Prior to the petition date, Marlene T. Sipes ("Debtor") was an attorney and a member of the South Carolina Bar.

7. On September 5, 2005, Debtor and the ODC entered into an Agreement for Discipline by Consent ("Agreement for Discipline") in which Debtor agreed to certain facts, agreed that she had violated certain rules governing her conduct as an attorney, and agreed to the imposition of disbarment or lesser discipline as the result of her conduct described therein.

---

[3] See S.C. Const. art. V, § 1.
[4] See S.C. Const. art. V, § 4.
[5] See Lawyers' Fund for Client Protection, Rule 411, SCACR.
[6] See Rules for Layer Disciplinary Enforcement, Rule 5, RLDE, Rule 413, SCACR.
[7] Lawyers' Fund for Client Protection, Rule 411(a), SCACR.

2

8. On February 6, 2006, the Supreme Court of South Carolina issued an order that accepted the facts agreed to by Debtor in the Agreement for Discipline and disbarred Debtor from the practice of law ("Disbarment Order").[8]

9. In the Disbarment Order the Supreme Court of South Carolina made the following findings of fact:

   a. Debtor represented a party in a divorce action;

   b. as part of the divorce settlement, Edgar Clay ("Mr. Clay"), the ex-husband of Debtor's client,[9] placed $22,000.00 in Debtor's trust account for the purpose of settling his marital debt and that of Debtor's client;

   c. prior to depositing Mr. Clay's funds, Debtor's trust account balance was $0.00;

   d. rather than apply these funds for the benefit of her client and Mr. Clay, Debtor appropriated $19,311.67 of these trust funds to her personal use including taking an unauthorized settlement fee, using the trust money to pay her personal Lowes credit card bill, transferring the trust money to her personal account, and using this trust money to pay costs for Debtor's other clients;

   e. Debtor repaid a total of $13,571.58; however, Debtor did not have the balance of $8,428.42 in her trust account and the balance of her trust account was $0.00;

   f. the missing $8,428.42 were funds of Mr. Clay and Debtor's client; and

---

[8] See In the Matter of Sipes, 367 S.C. 368, 626 S.E.2d 802 (2006).
[9] Mr. Clay is not identified by name in the Disbarment Order but the facts described therein sufficiently identify him and, under the same set of facts, he is identified by name in the Agreement for Discipline.

3

g. the credit ratings of Mr. Clay and Debtor's client were severely impaired as a result of Debtor's actions;

10. In the Disbarment Order, the Supreme Court of South Carolina accepted Debtor's admission to violating applicable Rules of Professional Conduct and found that Debtor violated the following rules governing her conduct as a member of the South Carolina Bar:

a. Rules of Professional Conduct, Rule 1.15, RPC, Rule 407, SCACR (providing that a lawyer shall hold the property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property and that a lawyer shall not use any entrusted property to obtain a personal benefit for the lawyer); and

b. Rules of Professional Conduct, Rule 8.4(d), RPC, Rule 407, SCACR (providing that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

11. Following the entry of the Disbarment Order, Debtor filed a petition for a rehearing with the Supreme Court of South Carolina. The petition was denied. Debtor failed to petition the United States Supreme Court for a writ of certiorari to review the Disbarment Order.

12. Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on February 2, 2007.

13. Post-petition, the Lawyers' Fund paid Mr. Clay an award of $8,428.42 based upon the Debtor's misappropriation of the funds described in the Disbarment Order.

14. According to Rule 411(d)(3), SCACR, the Lawyers' Fund is entitled to restitution for the amount it disbursed to Mr. Clay and it receives an assignment of the rights of Mr. Clay against Debtor.

15. On April 30, 2007, Plaintiffs commenced this adversary against Debtor seeking to deny Debtor a discharge of the debts owed to it pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).

16. Debtor, acting *pro se*, timely answered the complaint and generally denies the allegations contained therein. Debtor also asserts that any amounts that she may owe Mr. Clay have not been established by judgment in a pending action before a South Carolina state court.[10]

17. In response to Plaintiff's motion for summary judgment, Debtor asserts that the Disbarment Order was not the result of a fair hearing and affording Debtor equal protection; that Plaintiffs have circumvented South Carolina state court process to establish the amount owed Mr. Clay; and that the claim is based upon deceit, deception, and misrepresentation by the Plaintiffs.

18. At the hearing on Plaintiffs' motion for summary judgment, Plaintiffs introduced as evidence a ledger showing an award to Mr. Clay in the amount of $8,428.42; the Agreement for Discipline; and an affidavit of attorney's fees by Plaintiffs' counsel. Debtor introduced correspondence between her and the ODC showing communication regarding the South Carolina Supreme Court's ordered restitution plan and notice that Debtor may file bankruptcy.[11]

## CONCLUSIONS OF LAW

I. **Standard for Granting Summary Judgment**

Fed. R. Bankr. P. 7056 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[10] Prior to the petition date and prior to being paid by the Lawyers' Fund, Mr. Clay commenced a civil action in the South Carolina Court of Common Pleas to obtain a judgment against Debtor for the misappropriation described in the Disbarment Order. This civil suit was still pending at the time of the petition and was stayed.

[11] As a side issue, Debtor asserts that her obligation to enter into a restitution plan with the ODC, as ordered by the Supreme Court of South Carolina, is vague and that she has been unable to do so because of lack of guidance from the ODC and based upon her contention that she does not owe Mr. Clay. Debtor also contends that she provided sufficient notice to Plaintiffs of this bankruptcy although the Plaintiffs were not listed in Debtor's mailing matrix. These issues do not need to be addressed for purposes of Plaintiffs' motion for summary judgment.

Case 07-80060-jw    Doc 22    Filed 11/09/07    Entered 11/09/07 14:36:18    Desc Main
Document    Page 6 of 11

entitled to a judgment as a matter of law. Summary judgment is a favored mechanism "to secure the 'just, speedy and inexpensive determination' of a case." Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1322-23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1). "Where a movant [supports] its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." In re Dig It, Inc., 129 B.R. 65, 66 (Bankr. D.S.C. 1991). "To counter a motion for summary judgment, the non-movant may not rest on its pleadings or mere assertions of counsel." Id. Any inferences drawn in favor of the nonmoving party must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson, 57 F.3d at 1323. On a motion for summary judgment, the Court may apply the doctrines of *res judicata* and collateral estoppel to prohibit the re-litigation of the elements of an action under 11 U.S.C. § 523(a)(2)(A) or (a)(4) decided by a prior state court order and prohibit a collateral attack on that order. See Konan v. Sengal, C/A No. 06-2308, slip op. 2007 WL 1988534, *1 (4th Cir. Jul. 6, 2007) (unpublished) (noting that the court may take judicial notice of a state court disbarment and finding that the attorney could not challenge the constitutionality of the state court's disciplinary procedures in a lower federal court); Shumpert v. Ingram (In re Ingram), C/A No. 03-03823-W, Adv. Pro. No. 03-80347-W, slip op. at 5 (Bankr. D.S.C. Dec. 15, 2003) (applying collateral estoppel on a motion for summary judgment of an action brought under 11 U.S.C. § 523(a)(4)).

II.     **Debtor's Obligation to Plaintiffs is Non-Dischargeable Pursuant to 11 U.S.C. § 523(a)(4)**

To establish that an obligation is non-dischargeable under 11 U.S.C. § 523(a)(4), there must be 1) a debt, 2) incurred as a result of fraud or defalcation 3) while acting in a fiduciary

capacity. There are no genuine issues of material facts for any of these elements and therefore summary judgment for Plaintiffs is appropriate.

The debt is evidenced by the Disbarment Order, which found Debtor appropriated funds of Mr. Clay and her client in the amount of $8,428.42 to her personal use. See In the Matter of Sipes, 367 S.C. 368, 371, 626 S.E.2d 802, 803 (2006). Though Debtor now asserts that there is no debt owed to Mr. Clay and the adjudication of whether such a debt is owed and the amount of the debt is pending in state court, this position ignores the plain language of the Disbarment Order which found that the diverted funds were funds of both Mr. Clay and Debtor's client.[12] See id. Furthermore, Debtor stated in her Agreement for Discipline that she "received the said $22,000 from [Mr. Clay] in December 2003 and placed those funds in [her] trust account.... [she] does not have the balance of the Clays' funds of $8,428.42." Thus, in the Agreement for Discipline, Debtor admitted Mr. Clay had an interest in the diverted $8,428.42 and his interest in these funds was further confirmed by the findings of the Supreme Court of South Carolina. See id. The fact that there is a debt owed to Mr. Clay is also indicated in Debtor's sworn schedules whereby she lists Mr. Clay as a pre-petition creditor with a claim in an unknown amount.[13] It is of no consequence that the debt has not been reduced to a judgment against her by the state court since "debt," a defined term, has broad meaning and does not require that the underlying claim be reduced to a judgment pre-petition. See 11 U.S.C. § 101(12) (defining "debt" as liability on a "claim"); 11 U.S.C. § 101(5)(A) (defining "claim" as a right to payment, whether or not that right has been reduced to judgment); Com. of Ky., Natural Resources and Environmental Protection Cabinet v. Seals, 161 B.R. 615, 617 (Bankr. W.D. Va. 1993) (finding penalties

---

[12] The Supreme Court of South Carolina also ordered Debtor to enter into a restitution plan and "to pay restitution to all ... persons ... who have incurred losses as a result of her misconduct in conjunction with this matter." See Sipes, 626 S.E.2d at 804 (emphasis added).

[13] Debtor's schedules fail to indicate that the claim is disputed.

7

assessed against a debtor were non-dischargeable regardless of whether the penalties were reduced to a judgment).

The twin doctrines of *res judicata* and collateral estoppel are clearly applicable and now prohibit Debtor from asserting that Mr. Clay had no claim or that the claim amount of $8,428.42 is somehow otherwise improper.[14] See In re Varat Enterprises, Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (setting forth the elements of *res judicata* and collateral estoppel). Plaintiffs have standing to enforce this debt against Debtor and obtain reimbursement from her for the amount paid to Mr. Clay and for the costs incurred in pursuing this action against Debtor based upon the award paid to Mr. Clay.[15] See Lawyers' Fund for Client Protection, Rule 411(d)(3), SCACR.

The debt arises out of defalcation by Debtor. As set forth in the Ingram case, the term "defalcation" is broad and includes the breach of a fiduciary duty or the mere failure to account for money or property that has been entrusted to one. See Ingram, slip op. at 9. A mere deficit resulting from a debtor's misconduct may be defalcation. See id. at 9. Again, Debtor's misconduct and failure to account for funds entrusted to her is fully set forth in the Disbarment Order. The Supreme Court of South Carolina found that Debtor engaged in "misconduct" and her actions violated Rules of Professional Conduct, Rule 1.15, RPC, Rule 407, SCACR, a rule regarding the safekeeping of the property of clients and third parties. See Sipes, 626 S.E.2d at 804. The court also found that Debtor was unable to account for the missing $8,428.42, having used the same for her personal benefit. See id. at 803. This misuse of trust funds constitutes a defalcation. See Ingram, slip op. at 10. The Supreme Court of South Carolina's findings that clearly indicate Debtor's defalcation cannot be re-litigated in this forum and therefore there are

---

[14] Debtor asserts in her opposition to summary judgment that the restitution sum of $8,428.42 is arbitrary; however, the award by the Lawyers' Fund to Mr. Clay is in the precise amount of the Supreme Court of South Carolina found that Debtor had misappropriated and not repaid to Mr. Clay and his ex-wife.

[15] Without opposition, Plaintiffs submitted an affidavit of the fees and costs in the amount of $2,750.00 incurred in pursuing this adversary.

no genuine issues of material fact on this element. See id. (applying collateral estoppel and finding defalcation based upon a probate court's order removing the debtor as trustee of an estate for using the estate's funds for her personal benefit).

Debtor's actions occurred while she was acting in a "fiduciary capacity." This term is not defined by statute but rather has been defined by common law. See Arrow Concrete Co. v. Bleam (In re Bleam), 356 B.R. 642, 649 (Bankr. D.S.C. 2006). "Although the concept of 'fiduciary' in the dischargeability context is a narrowly defined question of federal law, courts look to state law to determine whether the requisite trust relationship exists." In re Baird, 114 B.R. 198, 202 (9th Cir. BAP 1990). See also, Bleam, 356 B.R. at 649-650 (finding state law is guidance for the existence and extent of the parties' relationship). Generally, "fiduciary capacity" is found when the relationship is that of a pre-existing express or technical trust. See Bleam, 356 B.R. at 649. Debtor asserts that she was not a fiduciary of Mr. Clay because there was no attorney-client relationship between her and Mr. Clay; however, the lack of an attorney-client relationship does not preclude a finding that Debtor acted in a fiduciary capacity and held the funds pursuant to an express trust. See e.g., In re Sipes, 297 S.C. 531, 377 S.E.2d 574 (1989) (suspending Debtor from the practice of law for one year for misappropriating, to her personal use, funds entrusted to her that arose out of the sale of Girl Scout cookies by her daughter's Girl Scout troop notwithstanding the fact that there was no attorney-client relationship between Debtor and the Girl Scouts). An express trust exists when there is 1) a declaration creating the trust, 2) a trust *res*, and 3) designated beneficiaries. See King v. Richardson, 136 F.2d 849, 857 (4th Cir. 1943); Whetstone v. Whetstone, 309 S.C. 227, 231-32, 420 S.E.2d 877, 879 (S.C. Ct. App. 1992). It is clear from the Disbarment Order and the Agreement for Discipline that all elements of an express trust were present in Debtor's relationship with Mr. Clay in that there was

9

a divorce settlement agreement that created the trust, a trust *res* of $22,000.00, and intended beneficiaries of Mr. Clay and Debtor's client through the extinguishment of their marital debt with the trust *res*.[16] Sipes, 626 S.E.2d at 802-803. Thus, the Court finds that there are no genuine issues of material fact barring a finding that Debtor acted in a fiduciary capacity based upon the unambiguous findings in the Disbarment Order. See Ingram, slip op. at 10.

Debtor's defenses to the motion for summary judgment do not raise a genuine issue of material fact.[17] Debtor generally argues that the disbarment process was not the result of a full and fair opportunity to be heard on the merits of her case. In her response to Plaintiffs' motion for summary judgment, Debtor makes accusations about the ODC's conduct, observations about the fairness of the governing rules, and concludes that she was denied equal protection and a fair hearing. Whatever merit these arguments may have, Debtor may not now collaterally attack the findings in the Disbarment Order with accusations about the alleged unfairness of the disbarment process. See Allstate Ins. Co. v. West Virginia State Bar, 233 F.3d 813, 817-18 (4th Cir.2000) (holding the Rooker-Feldman doctrine deprived district court of jurisdiction to review whether a decision of West Virginia State Bar was constitutional); Konan, 2007 WL 1988534, *1 (holding that a disbarred attorney's claims for violation of the Equal Protection Clause and alleged denial of due process arising out of the disbarment process were barred by the Rooker-Feldman doctrine). To the extent the Disbarment Order and the findings therein were the result of some

---

[16] The comments to the Rules of Professional Conduct violated by Debtor also indicate that lawyers act in a "fiduciary capacity" when holding the property of third parties. It provides in relevant part that lawyers should "hold property of others with the care required of a professional fiduciary" and "[s]eparate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities." Rules of Professional Conduct, Rule 1.15, cmt. 1, RPC, Rule 407, SCACR (emphasis added).

[17] When a motion for summary judgment is supported by evidence sufficient to grant the moving party a judgment, the non-moving party is required to come forward with evidence sufficient to raise a genuine issue of material fact. See Dig It, 129 B.R. at 66. The only evidence submitted by Debtor were letters between her and the ODC regarding the ordered restitution plan. Debtor has produced no evidence to refute Plaintiffs' evidence regarding whether this debt is non-dischargeable under 11 U.S.C. § 523(a)(4). See id. (holding the non-movant many not rely on its pleadings or the argument of counsel but must support its opposition to summary judgment with evidence sufficient to raise a genuine issue of material fact where the moving party has supported the motion for summary judgment with evidence sufficient to establish its right to judgment).

constitutionally infirm process, Debtor's avenue would have been to petition the United States Supreme Court for a writ of certiorari, which she failed to do. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (finding, in a case where a state court prevented a party from sitting for the bar exam, that that the lower federal court lacked subject matter jurisdiction over "challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court."). See also, Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (affirming the federal court's decision to abstain from hearing the constitutional claims of an attorney subject to discipline regarding the disciplinary process since the proper venue to raise such claims is first in the state court).

For the reasons stated herein, Plaintiffs' motion for summary judgment is granted. Debtor's debt to Plaintiffs in the amount of $8,428.42 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).[18] Plaintiffs are entitled to their cost in pursuing this matter in the amount of $2,750.00, which is not subject to discharge.

**AND IT IS SO ORDERED.**

_(signature)_
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
November 8, 2007

---

[18] Having concluded that the debt is non-dischargeable under 11 U.S.C. § 523(a)(4), the Court need not consider the merits of Plaintiffs' claim under 11 U.S.C. § 523(a)(2)(A).

11